IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Theresa Mokrejs<br>　　　　Plaintiff,<br><br>　　　vs.<br><br>Ice Line Quad Rinks,<br>　　　　　　And<br>Ice Line, Inc.,<br>　　　　Defendants. | Civil Action No. _____<br>JURY TRIAL DEMANDED |

## COMPLAINT

1. Plaintiff Theresa Mokrejs ("Mrs. Mokrejs") brings this civil action under Federal law and the laws of the Commonwealth of Pennsylvania, seeking compensatory damages, punitive damages, and injunctive relief against Defendants for offenses arising from, *inter alia*, Defendant's (a) Violation of the Americans with Disabilities Act; (b) Retaliation Pursuant to 42 U.S.C. Section; 1983 (c) Negligent Infliction of Emotional Distress; and (d) Intentional Infliction of Emotional Distress.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over the Americans with Disabilities Act (herein "ADA") claims in this case pursuant to 28 U.S.C. § 1331, as those claims arise under the laws of the United States. *See* 42 U.S.C. § 12101, *et seq*.

3. This Court has supplemental jurisdiction over the Pennsylvania law claims in this case pursuant to 28 U.S.C. § 1367 because those claims are so related to the claims that are

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred within the jurisdiction of this Court.

## PARTIES

5. Plaintiff Theresa Mokrejs resides in Elverson, Pennsylvania. As was known to Defendants at all times relevant to this action, Mrs. Mokrejs is physically disabled and is confined to a wheelchair.

6. Defendant Ice Line, Inc., is an entity with a business address of 700 Lawrence Drive, West Chester, PA 19380. At all times relevant to this matter, it was responsible for the maintenance, design, and care of the Ice Line Quad Rink, also located at 700 Lawrence Drive, West Chester, PA 19380.

7. Defendant Ice Line Quad Rinks is, per its own website, "a state-of-the-art ice-skating facility, providing ice skating, figure skating, and ice hockey entertainment to an average of 6,500 people a week." The building is physically located in West Chester, Pennsylvania.

## FACTS

8. Ice Line Quad Rinks is a facility in West Chester, Pennsylvania which has four ice rinks. The rinks are used for various purposes including Ice Hockey, Figure Skating, and casual Skating. It is open to the public, but is frequently rented to private parties and teams for events.

9. Ms. Mokrej's son plays ice hockey at the Ice Line Quad Rinks as a member of the Quakers. But due to the design of the building, Ms. Mokrej is unable to view many of her son's games because seating around portions of the arena is not wheelchair accessible.

10. Upon information and belief, of the four rinks at Ice Line, three of them (Rinks One, Three, and Four) now have ramps which make wheelchair accessibility to their respective seating areas possible. However, rinks one and three are only recently accessible to those in wheelchairs. Upon information and belief, ramps were only added in those areas within the past two years.

11. Rink Two remains inaccessible to those in wheelchairs. Rink Two is an older rink which has been modified within the last ten years with a wooden seating area to which there is no wheelchair access. Ice Line directors and management are unwilling to make Rink Two wheelchair accessible, and further believe Ice Line is under no obligation to do so because of Rink Two's construction date.

12. Therefore, at present, Ms. Mokrejs and other wheelchair-bound persons cannot access Rink Two in a way similar to nondisabled persons. They also cannot watch action on the ice from the floor because of the height of the boards.

13. On several occasions, Ice Line employees proposed that Ms. Mokrejs be lifted from the floor to the seating area in her wheelchair by individuals who are not trained in mobility assistance. This suggestion was patronizing, insulting, and embarrassing. It compounded Ms. Mokrejs' disappointment and sadness regarding her inability to watch her son play.

14. And on several occasions, John Graves, the President of Ice Line, told several Quaker coaches, including Coach Richard Brown, to alter the team's schedule so Ms. Mokrejs' son would not play on any of the inaccessible rinks because he "wasn't going to spend the money" to make all of the rinks ADA compliant.

15. Further, upon information and belief, Ice Line has several structural issues which make the building unsafe. It is believed that Rink Two has a structurally unsound wall, with a sinkhole under that portion of the building.

16. In January 2018, after 25 years of a mutually favorable business relationship between Quaker Hockey and the Defendants, Defendants refused to renew the Quakers' facility and ice rental contract. Defendants also refused, via their attorney, to participate in any discussions or negotiations whatsoever. Instead, the Defendants decided to "go in a different direction."

17. Negotiations to renew the contract began in early December 2017, during the course of Ms. Mokrejs discussions of inadequate access to the facilities for those with disabilities. During those discussions, John Graces, the owner of Ice Line, attempted to impose an annual $50,000 "facility fee" on the Quakers for the use of the rink. Though explanation was requested regarding this, Mr. Graves refused to provide any further information or clarification. No other organization skating out of Ice Line was required to pay such a fee.

18. The very one-sided proposal also included a new payment schedule which required the Quakers to pay $150,000, compared to $50,000 the year before, and make Ice Line's pro-shop the exclusive supplier of Quaker uniforms.

19. Upon information and belief, no other teams contracted with the Defendants were negotiated with in this hostile manner.

20. The Quakers now use a different facility to practice and play their hockey games.

### COUNT I: VIOLATIONS OF THE AMERICANS WITH DISABILTIES ACT
(By Plaintiff against All Defendants)

21. Plaintiff hereby incorporates each and every allegation in the preceding paragraphs of this Complaint as set forth herein.

22. As the implementing regulations of the ADA provide,[1] any alteration to a commercial facility made after 26 January 1992 shall be made so as to "ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs."[2] An alteration is a change to a commercial facility that affects or could affect the usability of the building or facility or any part thereof.[3]

23. Alterations include, but are not limited to, remodeling, renovation, and changes or rearrangement in structural parts or elements.[4] This would include the installation of new seating areas and structures. And when existing elements, spaces, or common areas are so altered, then each such altered element, space, or area must comply with Part 36, Appendix A:

### Appendix to § 36.406(A)

| Compliance dates for new construction and alterations | Applicable standards |
| --- | --- |
| On or after January 26, 1993 and before September 15, 2010 | 1991 Standards |
| On or after September 15, 2010 and before March 15, 2012 | 1991 Standards or 2010 Standards |
| On or after March 15, 2012 | 2010 Standards |

---

[1] 28 CFR 36.402 (a).

[2] 28 CFR 36.402 (c) defines "maximum extent feasible" to relieve commercial facilities of the burden to make altered portions of their facilities accessible to wheelchair users where doing so would be "virtually impossible." But it certainly is not "virtually impossible" to make Rink Two accessible, as accessible seating has been added to other portions of the Rink, and the current seating can be lowered so that wheelchair ramp can be added without affecting the ability of attendees to see action on the ice.

[3] 28 CFR 36.402 (b).

[4] 28 CFR 36.402 (b)(1).

24. Here, Ice Line made an alteration to an assembly area without providing appropriate seating. On information and belief, Ice Line modified Rink Two, which is an assembly area in a commercial facility, in or after 2012. It nonetheless has no seating for those in wheel chairs. Ice Line therefore continues to be in violation of the 2010 Standards and Regulations of the ADA.

25. Ms. Mokrejs has repeatedly notified Ice Line of these violations. She has repeatedly requested that they be remediated when notice of the violations alone proved insufficient to motivate Ice Line.

WHEREFORE, plaintiff requests the following relief:

a) This court order the Defendants to make all areas of the facility accessible to those with disabilities, as is required by federal law;

b) Reasonable attorney's fees and costs to plaintiff pursuant to Section 42 U.S.C. section 1988; and

c) Such other and further relief as appears reasonable and just.

### COUNT II: RETALIATION PURSUANT TO 42 U.S.C. SECTION 1983
(By Plaintiff against All Defendants)

26. Plaintiff hereby incorporates each and every allegation in paragraphs 1-20 of this Complaint as if set forth fully herein.

27. The foregoing conduct of Defendants, specifically the contract negotiation, was undertaken to unlawfully deprive plaintiff of her civil and constitutional rights by penalizing plaintiff for her exercise of her rights under the First and Fourteenth Amendments to the United States Constitution.

28. As a direct and proximate result of the defendants' actions, Plaintiff suffered and continues to suffer emotional injuries, including serious mental anguish, psychological and emotional distress, anxiety, depression and pain and suffering, some or all of which may be permanent.

29. Defendants' acts were undertaken in a menacing and arbitrary manner, designed to cause plaintiff pain and distress. And, upon information and belief, were designed to ostracize Plaintiff and her family from the Quaker Hockey Team.

30. Defendants' acts were committed willfully, wantonly, maliciously, intentionally, outrageously, deliberately and/or by conduct so egregious as to shock the conscience.

31. Defendants conspired to inflict harm on plaintiff for the exercise of, and to deprive her of, her constitutional rights.

32. Defendants engaged in the aforesaid conduct for the purpose of violating plaintiff's constitutional rights by subjecting Plaintiff to mental and physical injuries as retaliation against them for expressing concerns regarding the ability of people with disabilities to access the facility.

33. As a direct and proximate result of the defendants' illegal and unconstitutional actions, plaintiff suffered pain, fear, anxiety, severe emotional trauma and the loss of the enjoyment of life, all to her great detriment and loss.

WHEREFORE, plaintiff requests the following relief:

    a) Compensatory damages to plaintiff against defendants jointly and severally;

    b) Punitive damages to plaintiff against defendants jointly and severally;

    c) Reasonable attorney's fees and costs to plaintiff pursuant to Section 42 U.S.C. section 1988; and

    d) Such other and further relief as appears reasonable and just.

## COUNT III: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

34. Plaintiff hereby incorporates each and every allegation in paragraphs 1-20 of this Complaint as if set forth fully herein.

35. The Defendants owed a duty to exercise reasonable care to Ms. Mokrejs as a business invitee, a customer, and an individual with a disability.

36. The Defendants were negligent and breached their duty to exercise reasonable care in providing a safe environment for Ms. Mokrejs. They failed to install ramps and other means of accessibility after multiple requests from the Mokrejs family.

37. As a result of the Defendants' conduct, Ms. Mokrejs suffered emotional distress that the Defendants knew or should have known would be and was the likely result of their actions and omissions. More particularly, Ms. Mokrejs suffered indignities, humiliation, severe emotional distress, and mental anguish, including trauma.

WHEREFORE, plaintiff requests the following relief:
   a) Compensatory damages to plaintiff against defendants jointly and severally;
   b) Punitive damages to plaintiff against defendants jointly and severally; and
   c) Such other and further relief as appears reasonable and just.

## COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

38. Plaintiff hereby incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth fully herein.

39. As set forth above, Defendants were aware of Ms. Mokrej's physical limitations. Despite this knowledge, they continued to intentionally ignore her requests to make the arenas handicap accessible.

40. It has also – after failing to accommodate Ms. Mokrejs over the course of multiple years – attempted to mollify her by offering to have persons without the proper training and qualifications lift her and her wheelchair onto the platform at Rink Two. One must wonder also what would happen to her if she were placed in a wheelchair-inaccessible area in that suggested way and a fire broke out.

41. As a result of the emotional abuse, Ms. Mokrejs's mental, emotional, and behavioral health has declined. Ms. Mokrejs has exhibited significant and concerning changes in behavior, and she has experienced a diminished enjoyment of life.

WHEREFORE, plaintiff requests the following relief:

a) Compensatory damages to plaintiff against defendants jointly and severally;

b) Punitive damages to plaintiff against defendants jointly and severally; and

c) Such other and further relief as appears reasonable and just.

Dated: 16 March 2018

Respectfully submitted,

*[signature]*

Michael D. Raffaele, Esq. (PA ID 91615)
Andrew Wollaston, Esq. (PA ID 322861)
1230 County Line Road
Bryn Mawr, PA 19010
T: (610) 922-4200
F: (610) 646-0888
Michael@MyKidsLawyer.com
Andrew@MyKidsLawyer.com
Counsel for Plaintiff